UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff-Appellant, *v.* RICHARD W. BRENNAN, Defendant-Appellee.

Fourth District   No. 16145

Opinion filed September 15, 1980.

Andrew C. Schnack, III, of R. P. O'Connell, Ltd., of Quincy, for appellant.

Patrick J. Cadigan, of Gillespie, Cadigan & Gillespie, of Springfield, for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

On April 19, 1976, plaintiff, United States Fidelity and Guaranty Company, filed suit in the circuit court of Morgan County seeking a declaration of its rights and duties under a policy of liability insurance it had issued to defendant Richard W. Brennan. After a hearing on the merits, the circuit court entered an order on February 15, 1980, declaring that plaintiff was under a duty to defend defendant in case No. 75-L-1094 before that court. Plaintiff appeals.

The pleadings admitted (1) the issuance of the policy, a copy of which was attached to the complaint, (2) that defendant was in the business of "heating, ventilating, air conditioning, and sheet metal work" and during the term of the policy was performing work under a contract with a school district which was plaintiff in case No. 75-L-1094, and (3) that two counts of the complaint in the foregoing case were directed against defendant alleging damages to the school district arising from defendant's performance of the contract. The complaint also alleged that an actual controversy existed between the parties because defendant claimed the policy covered the case brought by the school district and plaintiff maintained that coverage was denied by various exclusionary provisions of the policy.

The parties agreed that the trial court might take judicial notice of the pleadings in case No. 75-L-1094 and agree that the same is properly before us now. The only evidence presented to the trial court was a copy of the policy which was attached to the complaint and a copy of the transcript of a conversation between an adjuster for plaintiff and the defendant. In reaching its decision the trial court stressed the scarcity and indefinite nature of the evidence presented.

The complaint in case No. 75-L-1094 alleged that defendant contracted with the school district to furnish and install heating, ventilating, and air conditioning units on the roof of two of the school district's schools and that contrary to the contract, defendant performed his work in such an unworkmanlike manner and contrary to the provisions of the contract that large quantities of water were permitted to seep through the roof and into walls and ceilings, causing great damage. The complaint also alleged that in an unworkmanlike manner defendant failed to coordinate his work with that of another contractor, thereby causing the leaking. The policy provided defendant with contractual liability and comprehensive general liability coverages.

We agree with plaintiff that defendant had no coverage for the lawsuit under the contractual liability phase of the policy because of a provision thereof which stated, " 'contractual liability' * * * shall not be construed as including * * * a warranty that work performed by or on behalf of the Named Insured will be done in a workmanlike manner."

The main thrust of plaintiff's theory is that the comprehensive general liability provisions also fail to give coverage because of a provision of

endorsement number two of the policy which provides that the bodily injury and property damage liability coverage provisions do not apply to liability for damages "included with the completed Operations Hazard or the Products Hazard."

The completed Operations Hazard is defined as:

"[C]ompleted operations hazard includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named insured. 'Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the Named Insured under the contract have been completed,

(2) when all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may be required further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed."

■■ Plaintiff, as the insurer, had the burden of proving that a loss otherwise covered comes within the provisions of an exclusion stated in the policy. (*Marsh v. Metropolitan Life Insurance Co.* (1979), 70 Ill. App. 3d 790, 388 N.E.2d 1121.) The complaint in the suit brought against defendant by the school district gives no indication that its claimed loss occurred after the operation had been completed. The transcript of the conversation between defendant and the adjuster is rather confused. It indicates that defendant was called back to a particular school building several times because of complaints by school district personnel that water leaks were resulting from defendant's installation. However, it does not establish with certainty that the alleged water damage occurred after defendant left the job or even that it occurred after the district started using the installed equipment.

Each side cites several cases concerning application of similar insurance policy provisions defining completed operations hazards. We need not discuss these cases. The trial court found the evidence presented to be insufficient to prove that the alleged damage occurred after defendant's operations had been completed. Because of the failure of the statement

given to the adjuster to be more definite as to when the loss was alleged to have occurred, the trial court's decision was not contrary to the manifest weight of the evidence even if, contrary to the usual rule, we construe the policy's "completed operations hazards provisions" most strongly against defendant, the insured.

The policy defines the Products Hazards exclusion as:

"'[P]roducts hazard' includes bodily injury and property damage arising out of a Named Insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the Named Insured and after physical possession of such products has been relinquished to others."

In *Leakakos Construction Co. v. American Surety Co.* (1972), 8 Ill. App. 3d 842, 291 N.E.2d 176, a contractor had erected the brick walls and a brick chimney and incinerator system for a large apartment building. After completion, a tenant in the building sued the contractor for injuries resulting from fumes and smoke which were alleged to have entered her apartment because of faulty construction of the chimney and incinerator system. The contractor had a policy of liability insurance which excluded coverage for liability arising from "products manufactured, sold, handled or distributed by the [contractor]." (8 Ill. App. 3d 842, 843, 291 N.E.2d 176, 177.) In a suit brought by the contractor for indemnity, the court held that coverage for the tenant's claim was excluded by the foregoing clause. The court distinguished the case from *Hoffman & Klemperer Co. v. Ocean Accident & Guarantee Corp.* (7th Cir. 1961), 292 F.2d 324, where a similar clause did not exclude coverage for a similar suit brought against a masonry contractor doing tuck pointing. The court stated:

"The system was a specially constructed component in the wall and constituted a work product of the insured *which eventually caused an injury by reason of its internal defectiveness.* Appellant sold the incinerator system just as he sold his services. The sale of this completed work product, together with appellant's services, was one and the same transaction." (Emphasis added.) 8 Ill. App. 3d 842, 845-46, 291 N.E.2d 176, 179.

Here, the school district's complaint alleged that defendant contracted "to furnish and install the rooftop heating, vantilating, and air conditioning units." As in *Leakakos Construction Co.,* the performance of defendant's services (here, installing the units) was part of the same transaction as furnishing equipment (here, the units) but here (1) defendant did not build any system, and (2) the school district's complaint made no charge of internal defectiveness of the units furnished but complained only as to the manner in which they were put in place. Under the facts here, we hold that the "Products Hazards" exclusion was inapplicable.

■■ Plaintiff's final contention is that a further policy endorsement excluding rain damage from roofing operations prevented the policy from covering the suit by the school district. This endorsement stated:

> "[I]n consideration of the reduced rate at which this policy is written, it is agreed that it does not apply to injury to or destruction of any building or structure or its contents resulting from the influx of rain, snow, sleet or hail arising out of the Insured's roofing operations."

The major thrust of the underlying suit was that defendant's lack of workmanship had caused leakage in the roof of a school building while making an installation on a roof, but the evidence gave no indication that defendant had any function in building the roof. His contract expressly stated that it was "limited to Heating, Ventilating, and Air Conditioning Work." The rain damage endorsement for "roofing" work was not applicable.

We agree with the trial court that under the record made here "there may be coverage under Coverage 'B' of the policy, the evidence not being sufficient for the court to conclude that the operations of Brennan were 'completed' at the time of the occurrence." We also deem that the other various exclusions argued by plaintiff are not applicable. We, accordingly, affirm the judgment requiring plaintiff to furnish a defense.

Affirmed.

TRAPP and WEBBER, JJ., concur.