# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***Allstate Property & Casualty Insurance Co. v. Mahoney*, 2011 IL App (2d) 101279**

---

| | |
|---|---|
| Appellate Court Caption | ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, ALLSTATE INSURANCE COMPANY, and ALLSTATE INDEMNITY COMPANY, Plaintiffs-Appellees, v. RICHARD MAHONEY and TARA MAHONEY, Defendants-Appellants (Michael Frontier, Defendant). |
| District & No. | Second District<br>Docket No. 2-10-1279 |
| Filed | November 1, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a declaratory judgment action arising from the injuries defendants suffered when the brake pedal installed by plaintiffs' insured on a motorcycle one of the defendants was riding snapped off and caused the motorcycle to crash, the trial court properly entered judgment on the pleadings for plaintiff insurers on the ground that plaintiffs had no duty to defend under their insured's homeowner's policy due to the motor vehicle exclusion. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 10-MR-468; the Hon. Bonnie M. Wheaton, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Daniel J. Kordik, of Kordik Law Firm, of Elmhurst, for appellants.

Peter C. Morse and Daniel J. James, both of Morse, Bolduc & Dinos, of Chicago, for appellees.

Panel

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.

Justices Hutchinson and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendants, Richard Mahoney and Tara Mahoney, appeal from the November 11, 2010, order of the circuit court of Du Page County granting judgment in favor of the plaintiffs, Allstate Property and Casualty Insurance Company, Allstate Insurance Company, and Allstate Indemnity Company (collectively, Allstate), on their complaint for declaratory judgment. Allstate's complaint sought a declaration that it was not obligated to provide insurance coverage to defendant Michael Frontier for a motorcycle accident that injured Richard Mahoney. Richard Mahoney was injured while test-driving a motorcycle when the brake pedal, which Frontier had installed, broke off. On appeal, the Mahoneys argue that the trial court erred in determining that Allstate did not have a duty to defend Frontier due to the motor vehicle exclusion in the applicable insurance policy. Specifically, the Mahoneys argue that the motor vehicle exclusion does not apply because (1) the motorcycle was not a motor vehicle but rather a "motorized land conveyance"; (2) the motorcycle was in dead storage at the time of the accident; and (3) Richard Mahoney's injuries arose from Frontier's negligent attachment of the brake pedal. We affirm.

¶ 2    On July 6, 2007, Frontier was working on a motorcycle he owned at Xtreme City Motorsports, which was a garage owned by Richard Mahoney in Carol Stream. After welding the brake pedal to the motorcycle, Frontier directed Richard Mahoney to test-drive the motorcycle. Richard Mahoney then exited the parking lot at Xtreme City Motorsports and drove south on Kimberly Drive. Shortly after leaving the parking lot, Richard Mahoney attempted to apply the brake and the brake pedal snapped off. Richard Mahoney was subsequently injured when the motorcycle crashed.

¶ 3    On July 6, 2009, Richard Mahoney and Tara Mahoney filed a two-count complaint against Frontier sounding in negligence and loss of consortium. Allstate defended Frontier based on a homeowner's policy that it had issued to Frontier's parents. Allstate also indicated that it was defending Frontier under a reservation of rights. On April 1, 2010, Allstate filed a declaratory judgment action seeking a declaration that it had no duty to defend or indemnify Frontier with respect to the Mahoneys' lawsuit.

¶ 4    On September 2, 2010, the Mahoneys filed an amended complaint against Frontier. On

September 9, 2010, Allstate filed an amended complaint for declaratory judgment. On September 30, 2010, Allstate filed a motion for judgment on the pleadings. On November 8, 2010, following a hearing, the trial court granted Allstate's motion. The trial court held that: (1) the motorcycle was a motor vehicle; (2) the bodily injury claim arose out of the ownership and maintenance of the motorcycle; and (3) the motorcycle was not in dead storage. Accordingly, the trial court determined that no liability coverage was provided under the Allstate homeowner's policy. On December 7, 2010, the Mahoneys filed a timely notice of appeal.

¶ 5 On appeal, the Mahoneys argue that the trial court erred in granting Allstate's motion for judgment on the pleadings. The Mahoneys contend that the trial court erred in determining that Allstate was not obligated to defend Frontier due to the motor vehicle exclusion under the relevant insurance policy. Specifically, the Mahoneys argue that the motor vehicle exclusion did not apply because (1) the motorcycle was not a motor vehicle; (2) the motorcycle was in dead storage at the time of the accident; and (3) Frontier's alleged negligence was not vehicle-related.

¶ 6 A judgment on the pleadings is appropriate "where the pleadings disclose no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 385 (2005). All well-pleaded facts and reasonable inferences in the pleadings are taken as true. *Id.* Only facts apparent on the face of the pleadings, matters subject to judicial notice, and admissions in the record are considered by the court in ruling on a motion for judgment on the pleadings. *Id.* Thus, in the absence of any issues of material fact, we must determine whether the movant was entitled to judgment as a matter of law.

¶ 7 The general rules that govern the interpretation of other types of contracts also govern the interpretation of insurance contracts. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). When we interpret an insurance policy, our primary goal is to ascertain and give effect to the parties' intent as expressed in the language of the policy. *Id.* The proper interpretation of an insurance contract is a question of law, which we review *de novo*. *Hanson v. Lumley Trucking, LLC*, 403 Ill. App. 445, 447 (2010).

¶ 8 Allstate argues that it did not have a duty to defend under the exclusions listed in section II of the homeowner's policy issued to Frontier's parents, which stated in pertinent part:

"5. We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:

a) a motor vehicle in dead storage or used exclusively on an insured premises."

¶ 9 The parties' insurance contract did not define the term "motor vehicle." The term is defined by Webster's dictionary as "[a] self-propelled motor-powered vehicle that does not run on rails but travels on wheels." Webster's II New Riverside Dictionary 460 (1984). This definition is consistent with the definition of "motor vehicle" provided in the Illinois Vehicle Code (625 ILCS 5/1-146 (West 2010)). The Illinois Vehicle Code defines "motor vehicle" as:

"Every vehicle which is self-propelled and every vehicle which is propelled by electric

power obtained from overhead trolley wires, but not operated upon rails, except for vehicles moved solely by human power, motorized wheelchairs, low-speed electric bicycles, and low-speed gas bicycles." 625 ILCS 5/1-146 (West 2010).

"Vehicle" is defined as:

"Every device, in, upon or by which any person or property is or may be transported or drawn upon a highway or requiring a certificate of title under Section 3-101(d) of this Code [(625 ILCS 5/3-101(d) (West 2010))]." 625 ILCS 5/1-217 (West 2010).

¶ 10    Here, the motorcycle at issue was a motor vehicle. It had two wheels and an operating motor, and a person could ride it. Indeed, Richard Mahoney was riding the motorcycle upon a public road at the time of the accident.

¶ 11    Relying on *State Automobile Mutual Insurance Co. v. Hoyle*, 415 S.E.2d 764 (N.C. Ct. App. 1992), the Mahoneys insist that the motorcycle was not a motor vehicle but rather a "motorized land conveyance." In *Hoyle*, the insured was operating a go-cart a couple of blocks from his parents' home when he struck a person. *Id.* at 765. The homeowner's policy at issue excluded coverage for bodily injury arising out of the use of a motor vehicle. *Id.* However, the exclusion provided that it did not apply to "a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and (a) not owned by an insured; or (b) owned by an insured and on an insured location." (Internal quotation marks omitted.) *Id.* The reviewing court found that the go-cart was a motorized land conveyance rather than a motor vehicle. *Id.* at 766-67. The reviewing court explained that "motorized land conveyances" is a broader term than "motor vehicle." *Id.* at 767. The reviewing court found that motor vehicles were designed for use on streets or highways. *Id.* at 766. Motor vehicles were also required to be registered. *Id.* at 767. As the go-cart was not designed to be used on streets or highways, and because it was not subject to vehicle registration, it was not a motor vehicle. *Id.* Despite this finding, the reviewing court found that the exclusion to coverage applied because the go-cart was not being used at an insured location at the time of the accident. *Id.*

¶ 12    The Mahoneys contend that the motorcycle Richard Mahoney was driving was like the go-cart in *Hoyle* because it lacked features that made it suitable for highway use–that being it did not have functioning brakes. Further, the Mahoneys point out that the motorcycle was not titled and contend that, since the motorcycle was being reconstructed, it could not be titled. As such, the Mahoneys insist that the motorcycle was not a motor vehicle and should instead be classified as a "motorized land conveyance."

¶ 13    The Mahoneys' argument is unpersuasive. The Allstate insurance policy at issue makes no reference to a "motorized land conveyance." Rather, the insurance policy refers only to a "motor vehicle." As explained above, the motorcycle at issue fell within the definition of a motor vehicle. Under Illinois law, a motor vehicle requires neither functioning brakes nor a proper title in order to be a motor vehicle. Accordingly, the Mahoneys' arguments to the contrary are without merit.

¶ 14    We next consider the Mahoneys' argument that the trial court erred in determining that the motorcycle was not in dead storage when the accident occurred. The Mahoneys note that the insurance policy motor vehicle exclusion specifically indicated that it did not apply to

vehicles that were in dead storage.

¶ 15    A vehicle that is undergoing maintenance or is being started is not in dead storage. *Standard Mutual Insurance Co. v. Marx*, 367 Ill. App. 3d 512, 514-15 (2006). " 'The "dead" in "dead storage" suggests, at the least, that the engine would not be running.' " *Id.* at 515 (quoting *American Family Mutual Insurance Co. v. Van Gerpen*, 151 F.3d 886, 888 (8th Cir. 1998)). Here, as Richard Mahoney was operating the motorcycle on a public street at the time of the accident, it was not in dead storage. See *id.*

¶ 16    In so ruling, we find the Mahoneys' reliance on *Allstate Insurance Co. v. Burns*, 837 N.E.2d 645 (Ind. Ct. App. 2005), and *Nationwide Mutual Fire Insurance Co. v. Allen*, 314 S.E.2d 552 (N.C. Ct. App. 1984), to be misplaced. In neither of those cases was the motor vehicle at issue being driven at the time of the accident. See *Burns*, 837 N.E.2d at 648 (car was being worked on in barn at time of accident); *Allen*, 314 S.E.2d at 554 (motorcycle was being worked on in apartment at time of accident).

¶ 17    The Mahoneys' final contention on appeal is that the motor vehicle exclusion does not apply because Richard Mahoney's injuries arose both from a nonvehicle cause (Frontier's negligent welding of the brake pedal) as well as from Richard Mahoney's use of the motorcycle. The Mahoneys insist that, where an incident can be said to have both a vehicle-related cause and a non-vehicle-related cause, a motor vehicle exclusion will not apply.

¶ 18    The Mahoneys' argument is not legally accurate. Our supreme court has explained that, where an insurance policy excludes coverage for bodily injury "arising out of the ownership, maintenance, use or entrustment to others of any [motor vehicle] owned or operated or rented or loaned to any insured," coverage will not be found unless the alleged negligence occurred "wholly independent of any *** operation of the [motor vehicle]." (Internal quotation marks omitted.) *Northbrook Property & Casualty Co. v. Transportation Joint Agreement*, 194 Ill. 2d 96, 98-99 (2000); see also *Maxum Indemnity Co. v. Gillette*, 405 Ill. App. 3d 881, 887 (2010); *State Farm Fire & Casualty Co. v. Perez*, 387 Ill. App. 3d 549, 556-57 (2008).

¶ 19    In *Northbrook*, several students were injured and killed when a train collided with a school bus operated by the local school districts. *Northbrook*, 194 Ill. 2d at 97. The insurer of the school districts sought a declaration that it had no duty to defend against the underlying lawsuits filed as a result of the accident. *Id.* at 98. Based on the motor vehicle exclusion in the applicable policy, the supreme court determined that the insurer had no duty to defend because the allegations in the underlying complaints failed to state facts that brought the cases within or potentially within the policy coverage. *Id.* at 98-99. The supreme court stated that the allegations against the school districts–namely, that they poorly planned bus routes and failed to warn bus drivers of potential hazards along those routes–were only "rephrasings" of the fact that the injuries arose out of the school districts' use of the motor vehicle and not independent of any negligent operation of the bus. *Id.* at 99.

¶ 20    In *Maxum*, the plaintiff fell off the insured's float during a parade. *Maxum*, 405 Ill. App. 3d at 883. The plaintiff filed a complaint alleging that the insured (1) negligently operated the float; (2) put insufficient hand rails on the float; (3) failed to warn the plaintiff of unsafe conditions; (4) failed to equip the float with a retaining device; and (5) failed to provide a competent driver. *Id.* The reviewing court found that the insurer had properly denied

coverage because the claims fell within the scope of the auto exclusion. *Id.* at 887. The reviewing court explained that, because the allegedly defective conditions created a risk to the plaintiff only when the float was in motion, the defective condition claims were not wholly independent of the operation or use of the float; thus, the insurer had no duty to defend the underlying lawsuit. *Id.*

¶ 21    In *Perez*, the plaintiffs were passengers in the insured's auto when it was involved in a motor vehicle accident. *Perez*, 387 Ill. App. 3d at 550. The plaintiffs sued, alleging (1) negligent operation of the vehicle and (2) negligent modification of the seats in the vehicle and failure to warn of the same. *Id.* The insurer denied coverage pursuant to the motor vehicle exclusion in the insurance policy. *Id.* The trial court granted the insurer judgment on the pleadings and the reviewing court affirmed. *Id.* at 550-51. The reviewing court explained that the alleged problem with the modifications created a risk only when the car was in motion. *Id.* at 556.

¶ 22    Here, the allegedly faulty brake that Frontier installed created a risk only when the motorcycle was in motion. Because the improperly installed brake was not "wholly independent" of the operation of the motorcycle, Allstate had no duty to defend the underlying lawsuit due to the motor vehicle exclusion in the insurance policy.

¶ 23    The only Illinois case that the Mahoneys point to in support of their argument is *United States Fidelity & Guarantee Co. v. State Farm Mutual Automobile Insurance Co.*, 152 Ill. App. 3d 46 (1987) (*USF&G*). However, *USF&G* is consistent with *Northbrook*, *Maxum*, and *Perez*. In *USF&G*, a child being transported in a station wagon operated by a day-care center was injured when a passenger door opened and she fell from the moving vehicle. *Id.* at 47. The parents of the injured child sued the day-care center, alleging in two counts that its failure to provide sufficient supervision of the children and its failure to operate and maintain the station wagon properly were both proximate causes of the injuries. *Id.* The day-care's insurance company argued that it was not obligated to provide coverage due to the motor vehicle exclusion in the insurance policy. *Id.* at 48. Both the trial court and the reviewing court determined that the insurer was obligated to provide coverage because the underlying complaint alleged multiple proximate causes for the injury that were not related. *Id.* That is, negligent supervision could have been the sole cause of the injury even if no negligent vehicle use existed. *Id*; see also *Perez*, 387 Ill. App. 3d at 558-60 (explaining how *Northbrook* and *USF&G* are not inconsistent).

¶ 24    As explained above, Frontier's alleged negligent welding of the brake pedal would not have been a proximate cause of Richard Mahoney's injuries had the motorcycle not been in motion at the time of the accident. Because the alleged negligent welding of the brake pedal was not "wholly independent" of the use of the motorcycle as the proximate cause of the accident, Allstate was not obligated to defend Frontier. The trial court therefore properly granted Allstate's motion for judgment on the pleadings.

¶ 25    For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

¶ 26    Affirmed.